[ECF No. 60]

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **CRAIG KIMMEL,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-12743 (CPO)(EAP)** |
| **MASSACHUSETTS BAY INSURANCE CO.,** | |
| **Defendant.** | |

## OPINION

This matter comes before the Court by way of Defendant Massachusetts Bay Insurance Co.'s Motion, ECF No. 60, seeking to strike Plaintiff Craig Kimmel's supplemental expert disclosure of recreated architectural drawings. The Court has received Plaintiff's opposition brief, ECF No. 62, and Defendant's reply brief, ECF No. 63. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons that follow, and for good cause shown, Defendant's Motion to Strike is **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff Craig Kimmel ("Plaintiff") is the owner of a single-family residence in Cherry Hill, New Jersey. ECF No. 1-1, Complaint ("Compl."), ¶ 1. According to the Complaint, Defendant Massachusetts Bay Insurance Co. ("Defendant") issued a homeowners insurance policy to Plaintiff with a policy period from June 27, 2019, to June 27, 2020. *Id.* ¶ 3. The policy allegedly provided coverage for property damage to Plaintiff's residence, loss of use of the residence, and

damage to personal property.  *Id.* ¶ 9.  On June 3, 2020, lightning struck a tree at the corner of Plaintiff's property, which allegedly fell against Plaintiff's residence.  *Id.* ¶¶ 4-6.  As a result, Plaintiff's residence allegedly sustained extensive damage, including cracks in the foundation and shifting of the basement walls.  *Id.* ¶¶ 7-8.  Plaintiff alleges that he subsequently contacted Defendant, which sent adjusters and engineers to the property to assess the damage.  *Id.* ¶¶ 15-18.  However, Defendant has denied Plaintiff's claim and therefore, the necessary repairs to the residence have not been made.  *Id.* ¶ 20.

## **PROCEDURAL HISTORY**

On May 18, 2021, Plaintiff filed his Complaint in this action in the New Jersey Superior Court, Law Division, Camden County.  ECF No. 1, Notice of Removal, ¶ 1.  Plaintiff asserted claims for breach of contract (Count I), Compl. ¶¶ 22-24; a violation of the covenant of good faith (Count II), *id.* ¶¶ 25-26; declaratory judgment (Count III), *id.* ¶¶ 27-29; specific performance (Count IV), *id.* ¶¶ 30-34; and unjust enrichment (Count V), *id.* ¶¶ 35-37.  On June 18, 2023, Defendant removed this action to the District of New Jersey.  ECF No. 1, Notice of Removal.

During the adjustment phase of his underlying insurance claim, Plaintiff retained Premier Builders and Remodeling, Inc. ("PBR") to develop a proposal for work and an estimate based on an engineering report that Plaintiff provided.  ECF No. 60-1, Defendant's Memorandum of Law in Support of Motion to Strike Plaintiff's Supplemental Expert Disclosure ("Def.'s Mot.") at 3; Certification of Edward T. Hagan, Esq. ("Hagan Certif.") ¶ 3 and Ex. J (Deposition Transcript of Steven R. Feigeles ("Feigeles Tr.")) at 50:9 to 52:7.  On July 14, 2022, Defendant issued a notice of intent to serve a subpoena on PBR, seeking documents related to work PBR performed during the adjustment of the claim.  Def.'s Mot. at 3-4; Hagan Certif., Ex. A (Notice of Intent to Serve Subpoena).  Notably, the subpoena sought, among other information, "all Documents relating to

the calculation of, or otherwise supporting, the estimate to repair the Property." Hagan Certif., Ex. A at 10, ¶ 11.

Defendant served the subpoena on July 22, 2022. *Id.*, Ex. B (Declaration of Server). However, Steven R. Feigeles ("Mr. Feigeles"), the Vice-President of PBR, later testified at his deposition that he did not receive the subpoena because it was served on an employee of Long Architectural, another company based in the same building as PBR. *Id.*, Ex. J, Feigeles Tr. at 102:20 to 103:15. On September 6, 2022, Defendant sent a letter to PBR advising that it had not received a response to the subpoena, which had been overdue since August 4, 2022. Def.'s Mot. at 3; Hagan Certif. ¶¶ 6-7 and Ex. C (Letter from Edward T. Hagan, Esq.). Shortly thereafter, on an unknown date, Plaintiff informed Defendant that he intended to name Mr. Feigeles as an expert witness in this action; consequently, Defendant agreed to allow PBR to produce its subpoena responses along with Mr. Feigeles' expert report. Def.'s Mot. at 4; Hagan Certif. ¶ 8.

On November 14, 2022, Plaintiff served Defendant with his expert reports and disclosures. Hagan Certif. ¶ 10 and Ex. D (Plaintiff's Expert Reports and Disclosures ("Pl.'s Exp. Rpt.")).[1] Mr. Feigeles' expert report, dated October 3, 2022, contained a revised proposal for work from PBR describing the suggested repairs to Plaintiff's residence. *Id.*, Ex. D, Pl.'s Exp. Rpt. at 5-9.[2] The report also listed the estimated costs of repairs by category. *Id.*, Ex. D, Pl.'s Exp. Rpt. at 9-12. Mr. Feigeles' expert report stated that it was prepared "utilizing material take-off[s], quotes and pricing of the exact work as shown on drawings and reports." *Id.*, Ex. D, Pl.'s Exp. Rpt. at

---

[1] The Court set November 14, 2022, as Plaintiff's expert disclosure deadline. *See* ECF No. 34, Am. Scheduling Order, ¶ 1. In addition to Mr. Feigeles' expert report, Plaintiff served a Structural Assessment Report from Mina A. Mikaeel, P.E. of Kiro Engineering, LLC. Hagan Certif., Ex. D, Pl.'s Exp. Rpt. at 12. Defendant is not seeking to strike any portion of the Structural Assessment Report in this Motion.

[2] Mr. Feigeles' expert report is not paginated. The Court's citations to his expert report correspond to the ECF document page numbers.

12.[3]  Also, the report stated that "[a]ll construction material for your project will be supplied as per the plans supplied by Long Architectur[al]."  *Id.*, Ex. D, Pl.'s Exp. Rpt. at 10.

Defendant contends that Mr. Feigeles' expert report failed to respond to its earlier subpoena because the disclosures "lacked any communications or other documents relating to the earlier proposals prepared by [PBR] . . . ."  Def.'s Mot. at 4; Hagan Certif. ¶¶ 11, 16 and Ex. I (Letter from Edward T. Hagan, Esq.).  On November 18, 2022, Defendant sent Plaintiff a letter asserting that PBR had not sufficiently produced responses to the subpoena and requesting that PBR "do so immediately."  Hagan Certif. ¶ 12 and Ex. E (Letter from Edward T. Hagan, Esq.).  Even though PBR had not responded to the subpoena, Defendant timely served its expert report on December 19, 2022.  Def.'s Mot. at 4.

On March 2, 2023, Plaintiff sent Defendant a letter enclosing a statement from Long Architectural Services, Inc. and various invoices from PBR's subcontractors, which served as PBR's response to Defendant's subpoena.  Hagan Certif. ¶ 13 and Ex. F (Supplemental Statement and Documents).   In addition, Plaintiff served a "supplemental expert report" from Long Architectural Services, Inc., dated Feb. 9, 2023.  *Id.*  Finally, Plaintiff stated in his cover letter that these documents supplemented Plaintiff's answers to Defendant's interrogatories and document requests.  *Id.*  On March 6, 2023, Defendant responded by letter that it objected to the supplemental statement and documents as untimely.  *Id.* ¶ 14 and Ex. G (Letter from Edward T. Hagan, Esq.).

---

[3]  Creating and sending vendors "takeoffs" is the first step in the cost-estimation process for contractors.   As explained by Mr. Feigeles, "takeoffs"—sometimes called "material takeoffs"—are estimates of the amount and types of material architectural drawings suggest will be needed to complete a particular job, considering material availability, price, and projected waste.  Hagan Certif., Ex. J, Feigeles Tr. at 122:1 to 127:19.  A contractor then sends those estimates to vendors to obtain quotes and compare prices.  *Id.*, Ex. J, Feigeles Tr. at 124:25 to 125:19.  The goal of sending "takeoffs" is to estimate the best price a contractor can offer for a particular project.  *Id.*, Ex. J, Feigeles Tr. at 122:1-6.

On March 8, 2023, Plaintiff sent a letter encouraging Defendant to accept the supplemental statement and documents and to agree to an extension of the expert disclosure deadlines.  *Id.* ¶ 15 and Ex. H (Letter from Ted M. Rosenberg, Esq.).  On March 14, 2023, Defendant sent another letter to Plaintiff, again objecting to the supplemental statement and documents as untimely.  *Id.* ¶ 16 and Ex. I.

On March 30, 2023, Defendant conducted Mr. Feigeles' deposition.  Hagan Certif. ¶ 17 and Ex. J, Feigeles Tr. at 1:13.  Mr. Feigeles testified that he arrived at the cost estimates in his initial report by using architectural drawings from Long Architectural to create "takeoffs" and then sending those "takeoffs" to vendors to get price estimates for the materials needed to complete the job.  *Id.*, Ex. J, Feigeles Tr. at 121:22 to 122:6.  To create the "takeoffs," Mr. Feigeles first received digital and physical copies of architectural drawings from Long Architectural and then used them to approximate the quantity of materials needed for repairs.  *Id.*, Ex. J, Feigeles Tr. at 124:2 to 125:12.

Mr. Feigeles then sent the "takeoffs" to vendors to obtain quotes.  *Id.*, Ex. J, Feigeles Tr. at 122:7-13.  Next, he examined quotes from multiple vendors to determine the best available price for each required material.  *Id.*, Ex. J, Feigeles Tr. at 126:4-12.[4]  Mr. Feigeles, however, testified that he had not turned over the "takeoffs" or the architectural drawings supporting them to Defendant during discovery.  *Id.*, Ex. J, Feigeles Tr. at 128:21-24; 129:12-21.  Mr. Feigeles testified that he did not possess the architectural drawings because Plaintiff did not ask for them and because Long Architectural had demanded approximately $8,000 for the drawings, which Plaintiff had not paid.  *Id.*, Ex. J, Feigeles Tr. at 129:4-11.

---

[4]  Mr. Feigeles testified that items 4 through 12 of his cost estimates were determined by this process.  Hagan Certif., Ex. J, Feigeles Tr. at 127:5-8; *see also id.*, Ex. D, Pl.'s Exp. Rpt. at 10.

On April 4, 2023, Plaintiff filed a letter with the Court raising various discovery disputes. *See* ECF No. 51, Plaintiff's Discovery Dispute Letter. In relevant part, Plaintiff sought to supplement his expert disclosures with the additional statement and documents served on March 2, 2023. *Id.* at 3-4. Plaintiff also sought leave to supplement his expert disclosures with the architectural drawings that supported the "takeoffs." *Id.* at 4. To justify those requests, Plaintiff's counsel stated that he learned PBR used the drawings to prepare its cost estimates "for the first time" at Mr. Feigeles' deposition. *Id.* Moreover, Plaintiff claimed "he was never told that these drawings existed or that he would need to pay approximately $8,000 for the drawings to be released by Mr. Feigeles." *Id.* at 4-5. Plaintiff conceded that Defendant "should have had these drawings" and that "there have been some missteps made" but requested the opportunity to pay for the drawings and release them to Defendant. *Id.* at 5. On April 21, 2023, Defendant filed a letter in response, opposing Plaintiff's request to supplement his expert disclosures. *See* ECF No. 54, Letter in Response to Discovery Issues.

On April 28, 2023, the Court held a status and discovery dispute conference by telephone and heard oral argument from the parties on the record. *See* ECF No. 56, Minute Entry. That same day, the Court issued an Order construing Plaintiff's April 4, 2023 discovery dispute letter as a motion to compel discovery and to supplement his expert disclosures, which the Court granted in part. *See* ECF No. 55, Order on Plaintiff's Motion to Compel Discovery and Supplement Expert Disclosures. More specifically, the Court granted Plaintiff's motion to supplement his expert disclosures with the supplemental statement and documents served on March 2, 2023. *Id.* ¶ 5. Also, the Court granted Plaintiff's motion "to supplement his expert disclosures with the architectural drawings described in ECF No. 51 at 4-5" and ordered Plaintiff to inform the Court by May 1, 2023 when the drawings would be produced. *Id.* ¶¶ 6-7.

On May 1, 2023, Plaintiff's counsel sent a letter to the Court stating that he had contacted Mr. Feigeles about obtaining a copy of the architectural drawings from the architect but Mr. Feigeles had been unsuccessful. Hagan Certif. ¶ 29 and Ex. K (Letter from Ted M. Rosenberg, Esq.). Plaintiff stated that Mr. Feigeles would "continue trying to reach the architect." *Id.* On May 5, 2023, Plaintiff sent another letter to the Court claiming that Mr. Feigeles performed a "diligent search," but "that neither he nor his company retained the drawing(s)." *Id.* ¶ 30 and Ex. L (Letter from Ted M. Rosenberg, Esq.). According to that letter, Mr. Feigeles also told Plaintiff's counsel "that the architect who drew the drawings(s) checked with his office and his office cannot locate the drawing(s)," and that the architect "agreed to have the drawing(s) recreated . . . ." *Id.* On May 9, 2023, Plaintiff produced the recreated architectural drawings to Defendant. *Id.* ¶ 31 and Ex. M (Letter from Ted M. Rosenberg, Esq.).

On May 10, 2023, Defendant filed a letter with the Court objecting to Plaintiff's supplementation of his expert disclosures with the recreated architectural drawings and seeking leave to file a motion to strike. *See* ECF No. 57, Defendant's Pre-Motion Letter. On May 11, 2023, Plaintiff filed a letter in response, asking the Court not to "deprive [Plaintiff] of his day in court" by striking the drawings. *See* ECF No. 58, Plaintiff's Pre-Motion Letter, at 2. On May 16, 2023, the Court issued a Text Order granting Defendant's request for leave to file a motion to strike Plaintiff's supplemental expert disclosure. *See* ECF No. 59. On May 26, 2023, Defendant filed the present Motion to Strike the recreated architectural drawings. *See* ECF No. 60. On June 6, 2023, Plaintiff filed opposition to Defendant's Motion to Strike. *See* ECF No. 62, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Strike Plaintiff's Supplemental Expert Disclosure ("Pl.'s Opp."). And on June 13, 2023, Defendant filed a reply brief. ECF No. 63, Defendant's Reply Memorandum of Law in Further Support of Motion to Strike Plaintiff's Supplemental Expert Disclosure ("Def.'s Rep.").

**LEGAL STANDARDS**

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any witness it may use at trial to present expert testimony. "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report" containing, among other information, "a complete statement of all opinions the witness will express and the basis and reasons for them[,]" along with "the facts or data considered by the witness in forming them . . . ." Fed. R. Civ. P. 26(a)(2)(B). "The parties must supplement these disclosures when required under Rule 26(e)." Fed. R. Civ. P. 26(a)(2)(E).

Rule 26(e) requires a party to supplement or correct a disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing" or "as ordered by the court." Fed. R. Civ. P. 26(e)(1). "[T]he party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

"'Courts have repeatedly emphasized the limited scope of supplementation permitted by Rule 26(e); such supplementation is proper only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report.'" *Dandy v. Ethicon Women's Health & Urology*, 579 F. Supp. 3d 625, 629 (D.N.J. 2022) (quoting *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2019 WL 581544, at *3 (D.N.J. Feb. 13, 2019)). "Rule 26(e) is not an avenue to correct failures of omission because the expert did an inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 289 F.R.D. 424, 425 (E.D. Pa. 2013) (internal

quotations and citations omitted). "'In short, Rule 26 imposes a *duty* on [the parties]; it grants them no *right* to produce information in a belated fashion.'" *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 563 (D.N.J. 2022) (emphasis in original) (quoting *DAG Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 110 (D.D.C. 2005)).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013) ("If an expert report is stricken, that action effectively precludes the expert from testifying as to the subject matter and opinions contained in the report."). "In addition to or instead of this sanction," the court in its discretion "may order payment of the reasonable expenses, including attorney's fees, caused by the failure; may inform the jury of the party's failure; and may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(iv)." Fed. R. Civ. P. 37(c)(1)(A)-(C).

However, the Court is mindful that "'[t]he exclusion of critical evidence is an 'extreme' sanction . . . .'" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977)). Exclusion of evidence "should not be imposed where an untimely or improper expert disclosure amounts to only a 'slight deviation from pre-trial notice requirements' or occasions only 'slight prejudice' to the movant." *Withrow*, 967 F. Supp. 2d at 1000 (quoting *Paoli*, 35 F.3d at 791-92).

## DISCUSSION

I.    **The Court's Prior Order Did Not Authorize Supplementation with the Recreated Drawings**

As an initial matter, Defendant argues that supplementation with the newly recreated drawings is not compliant with the Court's April 28, 2023 Order, *see* ECF No. 55, ¶ 6. Def.'s Mot.

at 7-10.  Defendant argues that the Court's Order only permitted Plaintiff to produce the architectural drawings PBR and its subcontractors used to calculate the cost estimates in Mr. Feigeles' expert report.  *Id.* at 8.  Plaintiff does not directly rebut this argument; in fact, Plaintiff acknowledges that the failure to produce the original drawings was a "technical failure" to comply with the Court's Order.  Pl.'s Opp. at 11.

By letting Plaintiff "supplement his expert disclosures with the architectural drawings described in ECF No. 51 at 4-5[,]" the Court afforded Plaintiff a narrow remedy.  ECF No. 55, ¶ 6.  Specifically, the Court permitted supplementation with the "preliminary architectural drawings that were used by PBR and it[s] subcontractors in providing their cost estimates."  ECF No. 51 at 4.  These were the same drawings that Mr. Feigeles testified about during his March 30, 2023 deposition.  *Id.*; *see also* Hagan Certif., Ex. J, Feigeles Tr. at 128:19 to 129:21.  However, Plaintiff acknowledges that "neither Mr. Feigeles nor the architect had retained a copy of the drawings." *See* Pl.'s Opp. at 6.  Moreover, it appears that the recreated drawings are not simply photocopies of the original drawings that PBR and its subcontractors relied upon in calculating the cost estimates presented in Mr. Feigeles' expert report.  Hagan Certif. ¶ 30 and Ex. L.  The purpose of the Court's Order was to allow Plaintiff to provide Defendant the drawings that were used by Plaintiff's expert in coming to his opinion.  Given that the original drawings are lost, Plaintiff cannot comply with the Court's Order.

In response, Plaintiff seeks to remedy his noncompliance by offering Defendant the recreated drawings.  Plaintiff, however, has provided almost no information about how Long Architectural generated the recreated drawings.  Nor does Plaintiff explain how Defendant or the Court could verify the accuracy of the recreated drawings.  Indeed, Plaintiff does not dispute Defendant's contention that both the digital and physical copies of the original drawings have been lost.  *See* ECF No. 62-2, Certification of Ted M. Rosenberg, Esq. ("Rosenberg Certif.") ¶¶ 13-14.

At bottom, Plaintiff's production of the recreated drawings was not contemplated by the Court's April 28, 2023 Order, ECF No. 55, ¶ 6, and therefore, is not compliant.

## II.     Rule 26(e) Does Not Permit Supplementation with the Recreated Drawings

Because the Court had not previously granted Plaintiff leave to supplement his expert disclosures with the recreated architectural drawings, the Court proceeds to evaluate whether supplementation is proper under Federal Rule of Civil Procedure 26(e).  Defendant argues that supplementation with the recreated drawings does not comport with Rule 26(e) because the drawings do not correct an inaccuracy in Mr. Feigeles' expert report and do not provide information that was unavailable when the expert report was prepared.  Def.'s Mot. at 11.  Plaintiff does not extensively discuss whether supplementation is proper here under Rule 26(e), but Plaintiff responds that the recreated drawings do not present any "new opinions" or change any of the opinions expressed by Mr. Feigeles in his expert report or at his deposition.[5]  Pl.'s Opp. at 7.

As previously stated, Rule 26(e) only permits supplementation of expert disclosures to correct inaccuracies or to add information that was not available at the time of the initial expert report.  *Dandy*, 579 F. Supp. 3d at 629.  Rule 26(e) does not "'create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed.'"  *Ezaki Glico Kabushiki Kaisha*, 2019 WL 581544, at *3 (quoting *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009)).

---

[5]  Plaintiff argues that Defendant's citation to *Dandy v. Ethicon Women's Health & Urology*, 579 F. Supp. 3d 625, 629 (D.N.J. 2022) is inapposite to the present case.  Pl.'s Opp. at 7. However, Defendant responds that it did not cite to *Dandy* to make a factual comparison, but only to present the legal standards of Federal Rule of Civil Procedure 26(e).  Def.'s Rep. at 4.

A party cannot use Rule 26(e) to supplement a report with information available at the time she served the initial report.  For example, the plaintiff in *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553 (D.N.J. Mar. 18, 2022), moved to strike a discovery amendment, which defendant made to include the names of two witness truck drivers after the close of discovery.  The defendant's previous discovery responses had identified the truck drivers by number, not by name. *Id.* at 562-63.  The defendant argued that amending to include the previously identified witnesses' names was a permissible correction under Rule 26(e).  *Id.*  The court, however, rejected that argument and found that "the amendment does not constitute a proper supplement under Rule 26(e)." *Id.* at 563.  The defendant had the opportunity to contact a third party to obtain the names of the drivers within the discovery period but offered "no explanation for its failure to request such information . . . ." *Id.*  "Because [the defendant] could have identified the names of [the] fact witnesses during the discovery period, Rule 26(e) cannot serve as a 'safe harbor' for [the defendant's] failure to timely obtain discovery." *Id.*

Here, the recreated architectural drawings are not a proper supplement under Rule 26(e).  First, Plaintiff is not seeking to introduce the drawings to correct an inaccuracy in Mr. Feigeles' expert report.  Instead, Plaintiff is seeking to bolster Mr. Feigeles' cost estimates and better "establish the basis upon which he rendered his report."  Pl.'s Opp. at 11.  However, expert disclosures may not be supplemented for the purpose of deepening or strengthening existing opinions.  *In re Asbestos Prod. Liab. Litig. (No. VI)*, 289 F.R.D. at 425.  Second, the recreated architectural drawings do not supply information that was unavailable at the time of Mr. Feigeles' initial report.  Plaintiff does not dispute that the original architectural drawings, which PBR used to create "takeoffs" and arrive at cost estimates for materials, existed at the time Mr. Feigeles drafted his initial expert report on October 3, 2022, before Plaintiff's expert disclosure deadline of November 14, 2022.  *See* ECF No. 34, Am. Scheduling Order, ¶ 1.  According to Plaintiff's

counsel, Mr. Feigeles stated that "he had no documents in his file other than the report that he was preparing." Pl.'s Opp. at 4; *see* Rosenberg Certif. ¶ 7. Plaintiff's counsel claims that he first had the "revelation" that Mr. Feigeles had utilized architectural drawings during Mr. Feigeles' deposition on March 30, 2023. Rosenberg Certif. ¶ 11.

Even assuming these assertions to be true, they do not excuse Plaintiff's failure to recognize that the cost estimates in Mr. Feigeles' report were based on supporting drawings and other documents. Mr. Feigeles' expert report states, in large bold font, that it was prepared "utilizing material take-off[s], quotes and pricing of the exact work as shown on drawings and reports." Hagan Certif., Ex. D, Pl.'s Exp. Rpt. at 12. Also, the expert report states that "[a]ll construction material for [Plaintiff's] project will be supplied as per the plans supplied by Long Architectur[al]." *Id.* at 10. Thus, it is clear from the face of Mr. Feigeles' expert report that his opinions were based on architectural drawings, but Plaintiff failed to promptly request the documents from his expert. Plaintiff's counsel admits that he "apparently overlooked the notation . . . that referenced 'plans supplied by Long Architectur[al].'" Rosenberg Certif. ¶ 8. Under these circumstances, allowing supplementation with the replacement drawings would contravene Rule 26(e), which is not "'a loophole through which a party who submits partial expert witness disclosures . . . can add to them to her advantage after the court's deadline for doing so has passed.'" *Ezaki Glico Kabushiki Kaisha*, 2019 WL 581544, at *3 (quoting *Luke*, 323 F. App'x at 500).

Lastly, it is irrelevant that the recreated architectural drawings do not change Mr. Feigeles' expert opinion or present any new opinions. *See* Pl.'s Opp. at 7. Rule 26(e) does not state that supplementation of expert reports is improper only when the additions would change or add to the expert's opinion. *See, e.g., Vaskas v. Kenworth Truck Co.*, No. 10-1024, 2013 WL 1207963, at *2 (M.D. Pa. Mar. 25, 2013) (finding that untimely supplemental expert reports violated Rule 26(e) even though the supplemental reports did "not alter the opinions" in the initial reports). Because

the recreated architectural drawings do not correct an inaccuracy in Mr. Feigeles' expert report and do not provide information that was unavailable at the time of the initial report, they do not comport with Rule 26(e).

### III.    A Balance of the *Pennypack* Factors Supports Striking the Recreated Drawings as a Sanction

Having found that the recreated architectural drawings do not comport with the Court's April 28, 2023 Order, ECF No. 55, and that they are not a proper supplement to Plaintiff's expert disclosures pursuant to Rule 26(e), the Court must consider whether striking the recreated drawings is an appropriate sanction.  "In considering whether the exclusion of evidence is an appropriate sanction[,]" courts in the Third Circuit must evaluate:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)).[6]  In addition, a court should consider "'the importance of the excluded testimony.'"  *Konstantopoulos*, 112 F.3d at 719 (quoting *Meyers*, 559 F.2d at 904).

The factors that most strongly support striking the disclosures are the prejudice and surprise to Defendant, the inability to cure the prejudice, and Plaintiff's inadequate explanation regarding his failure to produce the original drawings (i.e., bad faith and willfulness).  Although two remaining factors—the resulting disruption to the trial if the evidence is excluded and the

---

[6]  These factors originated in *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894, 904-05 (3d Cir. 1977), and are sometimes referred to as the "*Pennypack* factors." *See, e.g.*, *Withrow*, 967 F. Supp. 2d at 1003-04.

importance of the evidence—weigh slightly against striking the recreated drawings, the Court finds that a balance of all the factors favors striking the recreated drawings.

### A.     Prejudice or Surprise

Defendant argues that it would be prejudiced if Plaintiff introduced the recreated architectural drawings because it cannot verify whether the drawings provide legitimate support for Mr. Feigeles' cost estimates.  Def.'s Mot. at 9.  Defendant claims that "there are no documents or other information available to [Defendant] to do its own evaluation of the recreated drawings as against the originals, which were never produced to either party in discovery . . . ." *Id.*  Plaintiff responds that "there is no additional prejudice" resulting from the recreated drawings because "[j]ust as before, the expert and presumably the subcontractors relied upon the drawings in formulating their repair costs to be charged to [Plaintiff]." Pl.'s Opp. at 9.  Plaintiff further argues that the supplemental disclosures were not surprising because the "logic" of the Court's earlier Order granting Plaintiff leave to supplement his expert disclosures with the original drawings, ECF No. 55, applies equally to the recreated drawings.  *Id.* at 9-10.  Moreover, Plaintiff argues that Defendant could not have been surprised because the recreated drawings do not "modify the expert's opinions" or "establish new theories of damages or liability." *Id.* at 10.  In reply, Defendant argues that the reasoning behind the Court's prior Order does not apply to the recreated drawings because the "original order contemplated the production of the original drawings," not documents recreated from scratch.  Def.'s Rep. at 5.  Defendant emphasizes that "there is no way to verify that the drawings are accurate recreations of the original . . . drawings or simply an end around to bolster an otherwise deficient expert report." *Id.*

Here, supplementation of Plaintiff's expert report with the recreated drawings would prejudice Defendant by interfering with its ability to meaningfully challenge Plaintiff's damages expert.  Mr. Feigeles' expert report is central to Plaintiff's case because it lists the estimated costs

to repair Plaintiff's residence and presents Plaintiff's alleged damages.  Specifically, Mr. Feigeles derived a significant portion of the cost estimates, items four through twelve, from the original architectural drawings supplied by Long Architectural.  *See* Hagan Certif., Ex. J, Feigeles Tr. at 127:5-8; *see also id.*, Ex. D, Pl.'s Exp. Rpt. at 10.  Accordingly, Defendant must have an adequate opportunity to examine the original drawings in order to assess Plaintiff's alleged damages.

While the Court previously concluded that Defendant would not be unduly prejudiced by the introduction of the original drawings, the same does not hold true for the recreated drawings. The recreated drawings place Defendant at a severe informational disadvantage.  To be sure, since all copies of the original drawings have been lost, Defendant has no ability to confirm whether the recreated drawings match the ones relied upon by PBR and its subcontractors.  Contrary to Plaintiff's assertion, *see* Pl.'s Opp. at 9, the recreated drawings were not used to create the "takeoffs"; they are entirely different records created months after Mr. Feigeles' expert report was served.  Defendant should not have to simply accept Plaintiff's word that the recreated drawings accurately resemble the original plans and fully support Plaintiff's alleged damages.  Without information about how the recreated drawings were generated, Defendant is unable to effectively test Mr. Feigeles' expert report on rebuttal, by offering its own expert or otherwise.  *See, e.g.*, *Forrestal Guarani S.A. v. Daros Int'l, Inc.*, No. 03-4821, 2012 WL 13187472, \*7 (D.N.J. Apr. 2, 2012) (finding that the defendant was "severely prejudiced" by the plaintiff's introduction of untimely expert reports which deprived the defendant "of the ability to meaningfully challenge that expert").

The Court also finds that Defendant has been prejudiced to a lesser extent by the delay and expense associated with Plaintiff's untimely supplemental disclosures, which were served on May 9, 2023, nearly six months after Plaintiff's deadline for expert disclosures expired on November 14, 2022.  Plaintiff's failure to meet the Court's deadlines has prevented the case from proceeding

to trial and has necessitated additional conferences, argument, and motion briefing.  *See, e.g.*, *E.M. Sergeant Pulp & Chem. Co. v. Travelers Indem. Co.*, No. 12-1741, 2015 WL 9413094, at *6 (D.N.J. Dec. 22, 2015) (finding that late disclosure of an expert report resulted in prejudice "in the sense of delay, inconvenience, and increased expense," along with "delayed resolution" of the case and "the need for additional motion practice").

For similar reasons, the Court finds that allowing supplementation with the recreated architectural drawings would surprise Defendant.  Until the recreated drawings were produced, Defendant had been expecting Plaintiff to provide the original architectural drawings that PBR and its subcontractors relied upon—not drawings Long Architectural created months later.  Defendant conducted discovery accordingly.  Even Plaintiff was surprised that neither Mr. Feigeles nor Long Architectural had retained a copy of the original drawings.  *See* Hagan Certif. ¶ 30 and Ex. L. While the recreated drawings do not change Mr. Feigeles' opinions or introduce new legal theories, they unexpectedly and suddenly leave Defendant unable to fully challenge Plaintiff's alleged damages.  In summary, Plaintiff's supplemental disclosures would cause Defendant to suffer significantly more than merely "slight prejudice" or surprise. *See Paoli*, 35 F.3d at 792.  Therefore, this factor strongly supports striking the recreated drawings.

### B.    Ability to Cure Prejudice

Next, Defendant argues that "[t]here is no discovery that can be done to resolve this issue" and cure the resulting prejudice.  Def.'s Mot. at 10.  Plaintiff counters that "[t]he ability to cure the prejudice . . . is relatively straightforward" because Defendant "can re-depose the expert with the drawings in hand."  Pl.'s Opp. at 10.  Defendant replies that additional discovery related to the recreated drawings would be much more "protracted" than Plaintiff suggests, and would possibly involve inquiring into spoliation issues, communications between PBR and its subcontractors, and the procedures followed to create the new drawings.  Def.'s Rep. at 5.  Even with this additional

discovery, Defendant argues that it would still be unable to confirm that the new drawings are accurate recreations of the originals. *Id.*

The Court agrees with Defendant that reopening discovery would be unlikely to cure the prejudice and resolve the informational deficit that Defendant faces. All copies of the original drawings appear to be irretrievably lost, and Plaintiff has not indicated that any alternative documents exist to compare against the recreated drawings for reference. Also, it is unclear that an additional deposition would sufficiently cure the prejudice. Plaintiff suggests that Defendant could take an additional deposition of Mr. Feigeles after reviewing the recreated documents, but this may be of little value because Mr. Feigeles did not draft the drawings. *See* Hagan Certif. ¶ 30 and Ex. L. Moreover, even if Defendant was permitted to take the deposition of the unnamed architect at Long Architectural who prepared the recreated drawings, that testimony may not provide sufficient assurance of fidelity to the original plans. The Court also shares Defendant's concerns that inquiring into the recreation of the architectural drawings could be a protracted process that may ultimately be of little usefulness. *See, e.g.*, *N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, No. 12-5610, 2017 WL 3624239, at *11-12 (D.N.J. Aug. 23, 2017) (refusing to extend discovery and finding that this factor favored striking an expert report where the plaintiff failed to "produce all information it intended to rely upon to prove damages" in a timely fashion). Plaintiff's window to cure the prejudice to Defendant without leave of Court has passed; therefore, this factor weighs strongly in favor of striking the drawings.

### C.    Disruption of Trial

On this factor, Plaintiff argues that introducing the recreated architectural drawings would not disrupt the trial of this case because Defendant has not yet completed its expert discovery. Pl.'s Opp. at 10. Plaintiff claims that Defendant cancelled the deposition of Plaintiff's other expert witness, Mina Mikaeel, P.E. ("Mr. Mikaeel"), "to possibly seek to file a supplemental report . . .

." *Id.* Also, Plaintiff notes that he has not yet deposed Defendant's liability expert and that the Court has not conducted a pre-trial conference or scheduled a trial date. *Id.* at 10-11. In response, Defendant disputes the circumstances of the cancellation of Mr. Mikaeel's deposition. Def.'s Rep. at 6-7. According to Defendant, Plaintiff's suggestion that Defendant sought to submit a supplemental expert report "is a complete fabrication." *Id.* at 6. Lastly, Defendant argues that Plaintiff has not yet deposed its liability expert "because Plaintiff's counsel unilaterally discontinued the deposition . . . ." [7] *Id.* at 6-7.

Courts in the Third Circuit regularly find that this factor does not support striking an expert report or disclosures "if no trial date has yet been set." *See, e.g.*, *White v. Beaver Cnty.*, No. 17-998, 2019 WL 5395212, at *2 (W.D. Pa. Oct. 22, 2019) (collecting cases). For instance, in *Brown v. Robert Packer Hospital*, 341 F.R.D. 570, 572 (M.D. Pa. 2022), the plaintiff moved to strike the defendants' untimely expert report. The court noted that "discovery in this case has dragged on for more than two years" for which "the fault lies primarily with the [d]efendants." *Id.* at 574. However, the court found that introducing the late expert report "would not disrupt the orderly and efficient trial of the case" because the "case ha[d] not been scheduled for trial . . . ." *Id.*; *but see Motamed v. Chubb Corp.*, No. 15-7262, 2020 WL 7227252, at *4 (D.N.J. Mar. 11, 2020) (finding that introducing a supplemental expert report would disrupt the trial of a case not yet scheduled for trial because "doing so would require deadline extensions and further delays in the conclusion of expert discovery").

---

[7] Defendant alleges that the deposition was also delayed because Plaintiff's counsel exceeded the scope of permissible questioning. Def.'s Rep. at 6-7. The Court has already addressed the scope of permissible questioning of Defendant's expert witness in its April 28, 2023 Order on Plaintiff's Motion to Compel Discovery and Supplement Expert Disclosures, ECF No. 55, and will not repeat its rulings here.

Here, perhaps the only point of agreement between the parties is that expert discovery is not yet complete. The Court had previously scheduled a final pretrial conference for June 1, 2023, *see* ECF No. 50, Am. Scheduling Order, ¶ 2, but adjourned that conference upon the filing of the present Motion to Strike, *see* ECF No. 61, Text Order. Most importantly, the Court has not yet set a trial date. Therefore, at the current stage of litigation, this factor favors Plaintiff, regardless of the reasons for cancelling the experts' depositions or whether Defendant ever intended to submit a supplemental expert report. The Court, however, acknowledges that permitting Plaintiff to introduce the recreated drawings would further disrupt an already delayed case. The conclusion of expert discovery has been repeatedly delayed due to discovery disputes and Plaintiff's multiple untimely supplemental expert disclosures. In total, this factor militates slightly against striking the recreated drawings.

### D. Bad Faith or Willfulness

Regarding the fourth factor, Plaintiff acknowledges that "it was an unusual business practice" for PBR and Long Architectural "not to retain copies" of the architectural drawings undergirding Mr. Feigeles' expert report. Pl.'s Opp. at 11. Still, Plaintiff argues that this "deviation" is "not tantamount to bad faith." *Id.* Plaintiff contends that his expert could not have willfully refused to produce the original drawings because they had already been lost at the time of the Court's prior Order. *Id.* "[T]he failure to turn over what did not exist does not equate to willfulness." *Id.* Defendant responds that it is "puzzling" how "the destruction of all digital and physical files relating to the documents at issue" could not have been intentional. Def.'s Rep. at 7. Also, Defendant argues that Plaintiff must have been "aware of the drawings at the time Mr. Feigeles prepared his proposal" because "[t]he drawings are referenced explicitly in the proposal . . . ." *Id.*

In assessing whether a party has exhibited bad faith or willfulness, a finding that "a party's actions have amounted to a mere '[l]ack of diligence'" does not support striking the party's expert disclosures. *Withrow*, 967 F. Supp. 2d at 1006 (alteration in original) (quoting *Paoli*, 35 F.3d at 793). However, even where "there is no evidence of any bad faith[,]" the Court "may also consider [a party's] justifications for failing" to make required disclosures. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012); *see also Dandy*, 579 F. Supp. 3d at 632 (finding that "while perhaps not rising to the level of bad faith," a party "provid[ing] little to no justification for failing to comply with [a] scheduling order" supported striking a supplemental expert report); *Hamilton v. Dowson Holding Co.*, No. CIV. 2008-2, 2010 WL 3119912, at *4 (D.V.I. July 30, 2010) ("It is appropriate to exclude a late-filed expert report where the explanation for its tardiness is insufficient.").

Here, the record does not clearly establish that Plaintiff or his expert acted in bad faith to destroy the original architectural drawings or to create new, unverifiable replacement drawings. However, Plaintiff has not provided an adequate explanation for why Plaintiff's counsel or Mr. Feigeles did not retain the original drawings. Contrary to Plaintiff's argument, *see* Pl.'s Opp. at 11, the obligation to retain and produce the original drawings began long before the Court's April 28, 2023 Order, ECF No. 55, which permitted Plaintiff to supplement his expert disclosures out of time. Federal Rule of Civil Procedure 26(a)(2)(B) is clear that a party's expert report must include "the facts or data considered by the witness" and "any exhibits that will be used to summarize or support" the expert's opinion. Therefore, Plaintiff was obligated to produce the drawings by November 14, 2022, his deadline to serve expert reports and disclosures. *See* ECF No. 34, Am. Scheduling Order, ¶ 1.

However, apart from blaming an "unusual business practice[,]" Plaintiff has not explained why Mr. Feigeles and Long Architectural did not retain the drawings, what happened to the

drawings, when they were lost, how the new drawings were drafted, or who drafted them. *See* Pl.'s Opp. at 11. In an earlier letter, Plaintiff's counsel stated that "neither my client nor I can control whether the expert retained the architectural drawing(s) that were used by his company and the subcontractors . . . ." ECF No. 58, Letter from Ted M. Rosenberg, Esq. to the Court. Yet, as previously discussed, *see supra* Section II, it is obvious from the face of Mr. Feigeles' report that the cost estimates were based on architectural drawings from Long Architectural. Plaintiff's counsel could have contacted Mr. Feigeles or Long Architectural to ask for the drawings, but he did not. Mr. Feigeles testified at his deposition that Plaintiff "didn't ask" for the drawings or pay $8,000 to Long Architectural for them to be released. Hagan Certif., Ex. J, Feigeles Tr. at 129:4-11. Mr. Feigeles and Plaintiff's counsel should have known of their obligation to produce the drawings without Plaintiff's express instruction.

The Court recognizes that Plaintiff himself may not be personally responsible for failing to preserve and produce the original architectural drawings. Nevertheless, Plaintiff has not provided a convincing explanation for this serious failure to abide by the requirements of Rule 26 and the Court's scheduling deadlines. While the Court cannot conclude that the original drawings were destroyed willfully or in bad faith, Plaintiff has not adequately informed the Court of the circumstances surrounding the loss or recreation of the original drawings. Therefore, this factor weighs moderately in favor of striking the recreated drawings.

### E.  Importance of Evidence

Lastly, Plaintiff argues that the recreated drawings should not be stricken because Mr. Feigeles "needs to establish the basis upon which he rendered his report." Pl.'s Opp. at 11. Plaintiff emphasizes that the drawings will be necessary to "form the basis for the expert testimony at the time of trial." *Id.* at 11-12. Defendant responds that if the drawings were so important to Plaintiff's case, Mr. Feigeles "should have taken better care to preserve them or Plaintiff should

have requested them at a time that they could have been produced in original form . . . ."  Def.'s Rep. at 8.  Defendant argues that it should not be "irrevocably prejudiced by Plaintiff's failure to manage [his] own expert or otherwise meet [his] discovery obligations[,]" regardless of the importance of the drawings.  *Id.*

In applying this factor and considering the importance of evidence sought to be stricken, "[c]ourts favor the resolution of disputes on their merits."  *Abbott Lab'ys v. Lupin Ltd.*, No. 09-152, 2011 WL 1897322, at *5 (D. Del. May 19, 2011) (citing *Pro. Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 F. App'x 161, 165 (3d Cir. 2007)).  "However, the importance of the evidence alone is insufficient to overcome Rule 26."  *Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, No. 99-3121, 2008 WL 4378294, at *5 (D.N.J. Sept. 23, 2008) (excluding testimony because the four preceding *Pennypack* considerations outweighed the importance of the evidence factor, even when the testimony excluded was essential to establishing the damages element of the defendant's counterclaim), *aff'd sub nom. Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332 (3d Cir. 2010); *see also Paoli*, 35 F.3d at 791-92 (citations omitted) (explaining that even "critical evidence" may be excluded as a sanction under certain circumstances).

Further, the Court notes that "[i]in addition to or instead of" striking evidence, it "may impose other appropriate sanctions," including payment of "reasonable expenses, including attorney's fees caused by the failure . . . ."  Fed. R. Civ. P. 37(c)(1); *see also Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006) (stating that "[t]he Court has broad discretion regarding the type and degree of sanctions it can impose" pursuant to Rule 37); *Tolerico v. Home Depot*, 205 F.R.D. 169, 177 (M.D. Pa. 2002) (ordering the payment of attorney's fees and expenses pursuant to Rule 37(c)(1) that a party incurred "in obtaining documents that should have been produced" in response to an earlier discovery request).

Here, the Court recognizes that the recreated architectural drawings are highly important to Plaintiff's case. They are, in large part, how Plaintiff seeks to establish damages. The original architectural drawings used to reach the expert's opinion are no longer available. Regardless, because a balance of the *Pennypack* factors supports doing so, the Court will strike the supplemental disclosure.

## IV.    The Court Will Also Strike the Entirety of the Original Report

### A.    The Original Report was Served in Violation of Rule 26(a)(2)(B)

Although Defendant does not explicitly move to strike the remainder of Mr. Feigeles' expert report, the Court notes that the report cannot stand as-is. Here, Defendant has been prejudiced insofar as Plaintiff's expert failed to contemporaneously disclose the facts and data used to form his opinion as required by Rule 26(a)(2)(B). This is similar to the injury suffered by a party who receives an expert report out of time. *Cf. Lavell v. Camden Cnty. Coll.*, No. 21-6832, 2023 WL 4074077, at *7, *9 (D.N.J. June 20, 2023) (allowing additional discovery under Rule 37(c)(1) as a penalty for serving an out-of-time expert report because the opposing party's experts could not "review the rebuttal report, examine the data, and . . . challenge [the expert's] new analysis and conclusions); *cf. also SuperMedia LLC v. Morley*, No. 13-176, 2014 WL 5023386, at *12 (E.D. Pa. Oct. 8, 2014) (finding that a party "would be prejudiced by the admission of [a] back-dated report" because it did not have "the benefit of the underlying supporting documents[,] . . . an opportunity to examine the report[,] . . . [or] time to respond.").

Unlike in those cases, however, the facts and data considered by this expert are not new or different, but irretrievably lost. The recreated drawings, made under unknown circumstances, are no replacement for the originals. Simply put, Plaintiff cannot provide the facts and materials Mr. Feigeles considered in coming to the opinions in his report. Defendant cannot effectively rebut a report when an expert has not disclosed the materials used to come to the opinions in it. At this

stage of the litigation, no additional discovery would cure this prejudice.  Without disclosure of the documentation undergirding Plaintiff's expert report, service of that report violated Rule 26(a)(2)(B).

The Court may remedy violations of Rule 26(a)(2)(B) under Rule 37(c)(1) if the violation was neither substantially justified nor harmless.  *See* Fed. R. Civ. P. 37(c)(1).  In the Third Circuit, a substantial justification under Rule 37(c)(1) is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with [a] disclosure [requirement]"—that is, whether "a genuine dispute concerning compliance" exists. *Grider v. Keystone Health Plan Cent., Inc.*, 580 F. 3d 119, at 140 & n.23 (3d Cir. 2009) (quoting *Tolerico*, 205 F.R.D. at 175-76).  In addition, conduct is "harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Tolerico*, 205 F.R.D. at 176.  "The burden of proving substantial justification or harmlessness lies with the non-producing party."  *Norfolk S. Ry. Co. v. Pittsburg & W. Va. R.R.*, No. 11-CV-1588, 2015 WL 4377766, at *2 (W.D. Pa. July 15, 2015) (internal quotation marks omitted) (quoting *Frederick v. Hanna*, No. CIV.A.05-514, 2007 WL 853480, at *4 (W.D. Pa. Mar. 16, 2007)).

Here, the failure to provide the original drawings with the original report is neither substantially justified nor harmless.  As previously discussed, there is no bona fide dispute as to compliance with Rule 26; Plaintiff's counsel admits that the original drawings were not provided with the original report and were not retained by Mr. Feigeles or Long Architectural.  Rosenberg Certif. ¶¶ 11, 13-14.  The failure is therefore not substantially justified.  Nor is it harmless.  As the Court previously stated, Plaintiff has not provided a justification for a determination that losing or omitting the original drawings was an honest mistake.  That deprives Defendant of the fair opportunity to challenge the report's conclusions at trial.  The Court finds that the original report was served in violation of Rule 26(a)(2).

### B.   A Balance of the *Pennypack* Factors Supports Excluding the Entirety of Plaintiff's Expert Report Under Rule 37(c)(1).

Moreover, each *Pennypack* factor militates in favor of striking the entire report.  First, admitting the expert report is surprising and highly prejudicial to Defendant for the same reasons introducing the supplemental report would have been: Defendant cannot challenge the report without knowing what the expert considered in forming his opinion.  Second, there is no way for Defendant to cure the resulting prejudice at this stage of the proceeding because the drawings no longer exist—even if the Court granted Defendant leave to conduct additional discovery, there is no ready cure to remedy this violation.  Third, although allowing the evidence would not disrupt orderly administration of this case, Plaintiff's counsel has failed to provide an adequate explanation for why the originals were not included with the original expert report.  The Court also finds that the final *Pennypack* factor, the importance of the evidence, cannot save Plaintiff's expert report.  While that evidence is central to Plaintiff's claim, the prejudice and surprise to Defendant—an innocent party in this dispute—is far outweighed by its importance to Plaintiff.  Accordingly, the Court finds that a balance of the *Pennypack* factors supports striking Mr. Feigeles report in its entirety under Rule 37(c)(1).

Nevertheless, the Court recognizes that without a damages expert report and testimony, Plaintiff may be unable to litigate his case on the merits.  Therefore, the Court will exercise its discretion under Rule 37(c)(1) to temper the "harsh sanction" of striking the recreated drawings and thus, Mr. Feigeles' report and grants a more limited remedy.  *See Lavell*, 2023 WL 4074077, at *7.  The Court grants Plaintiff leave to file a new affirmative expert report on the issue of damages.  This will provide Plaintiff with an opportunity to demonstrate his damages with proper, contemporaneous supporting documents, which may include the recreated drawings.[8]  However,

---

[8]  The Court expects Plaintiff to produce all documents supporting a second affirmative

Defendant should not incur additional costs caused by Plaintiff's failure to comply with the rules governing expert disclosures. If Plaintiff elects to serve a second expert report, Plaintiff shall pay Defendant's expert fees incurred to prepare a responsive report. If Defendant elects to re-depose Plaintiff's expert, Plaintiff shall bear the costs of his expert to appear for the deposition, as well as Defendant's attorney's fees associated with taking the deposition. With these additional safeguards in place, Plaintiff will be afforded a reasonable opportunity to produce the expert report and testimony needed to support his damages claims and Defendant will not bear the financial impact.

## <u>CONCLUSION</u>

In conclusion, Defendant's Motion to Strike is **GRANTED**, and Plaintiff's supplemental expert disclosures of the recreated architectural drawings and the underlying expert report will be stricken. The Court's April 28, 2023 Order, ECF No. 55, did not permit Plaintiff to supplement his expert disclosures with the recreated drawings. Alternatively, supplementation with the recreated drawings does not comport with Rule 26(e). The balance of the *Pennypack* factors supports striking the recreated drawings.

Furthermore, the Court strikes Mr. Feigeles' entire report for Plaintiff's violation of Rule 26(a)(2)(B). *See* Fed. R. Civ. P. 37(c)(1). However, given the importance of the report to Plaintiff's case, the Court exercises its discretion and grants Plaintiff leave to file a second affirmative expert report with new, fully supported cost estimates based on the recreated drawings. If Plaintiff chooses to serve a second report, Plaintiff shall bear the following costs: (1) Defendant's expert fees incurred to prepare a responsive report; and (2) if Defendant chooses to re-depose

---

expert report at the time the expert report is served. The Court also expects any second report to include new, fully supported cost estimates based on the recreated drawings themselves. In addition, any second report should include a detailed explanation of how the recreated drawings undergirding the report were produced.

Plaintiff's expert on the second report, Plaintiff's expert fee for the deposition and Defendant's attorney's fees associated with taking that deposition.  This remedy allows Plaintiff to properly litigate his case on the merits while protecting Defendant from additional costs.  An appropriate form of Order accompanies this Opinion.

s/ Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:  Hon. Christine P. O'Hearn, U.S.D.J.