UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

**CRAIG KIMMEL**,

    *Plaintiff*,

v.

**MASSACHUSETTS BAY INSURANCE CO.**,

    *Defendant*.

No. 21-cv-12743

**OPINION**

---

**APPEARANCES:**

**Alan C. Milstein**
**Jeffrey P. Resnick**
SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.C.
Eastgate Corporate Center
308 Harper Drive, Suite 200
Moorestown, NJ 08057

    *On behalf of Plaintiff.*

**Edward Terrence Hagan**
**Jeremiah L. O'Leary**
FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC
67 East Park Place, Suite 901
Morristown, NJ 07960

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

## INTRODUCTION

This matter comes before the Court on a Motion for Summary Judgment filed by Defendant Massachusetts Bay Insurance Co. ("Defendant"). (ECF No. 85). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendant's Motion is **GRANTED.**

### I.   BACKGROUND[1]

#### A. Plaintiff's Claim

On June 3, 2020, a lightning strike caused major damage to a tree located in the southwest corner of Plaintiff Craig Kimmel's ("Plaintiff") property resulting in the tree falling and striking the ground nearby. (Pl.'s SOMF, ECF No. 93 at ¶ 5; Def.'s SOMF, ECF No. 90-1 at ¶ 5). Plaintiff's expert, Mina Mikaeel, opined that the tree fall caused vibrations and soil displacement, which in turn led to extensive damage to Plaintiff's home.[2] (Pl.'s SOMF, ECF No. 93 at ¶ 12). Specifically, Plaintiff alleges that the impact from the tree fall caused, among other things, cracking in the foundation, exterior siding, and interior drywall; damage to the basement, attic, and garage; and separation and sloping of the front porch (the "Loss").[3] (*Id.* at ¶ 6).

---

[1] The facts set forth herein related to this Motion are undisputed unless otherwise noted. To the extent facts remain in dispute, the Court finds that they are immaterial to its legal analysis.

[2] While Defendant argues that Mr. Mikaeel's expert report is insufficient to establish causation and should be excluded, (Def.'s Mot., ECF No. 85-2 at 35–41), because the Court resolves the Motion on other grounds, further discussion as to this issue is not warranted.

[3] The Court notes that it uses the term alleges because, while this fact is included in Plaintiff's Statement of Material Facts, the supporting citation is to Plaintiff's Complaint, rather than evidence from the record which is not verified and therefore insufficient to support the allegation under Federal Rule of Civil Procedure 56(c)(1).

At the time of the Loss, Plaintiff was insured under a homeowners policy issued by Massachusetts Bay Insurance Company, Policy No. HVY 7989780 (the "Policy"), which provided coverage for physical loss to the insured property, subject to various terms, conditions, and exclusions.[4] (Def.'s SOMF, ECF No. 90-1 at ¶ 1). Plaintiff submitted an insurance claim to Defendant, (*Id.* at ¶ 6), which was denied following an investigation that concluded that the Loss was not related to the tree fall but rather the result of pre-existing damage from long-term settlement and other unrelated factors. (Def.'s Mot., ECF No. 85-2 at 11–12). Plaintiff disputed the claim determination and subsequently initiated this action on May 18, 2021.

### B. The Policy's Loss Settlement Provision

Central to this dispute is the Policy's Loss Settlement provision that governs how covered property losses are valued. That provision states, in relevant part:

> **Loss Settlement.** Covered property losses are settled as follows . . .
> **b.** Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
> > (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:
> > > (a) The limit of liability under this policy that applies to the building;
> > > (b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or
> > > (c) The necessary amount actually spent to repair or replace the damaged building.
> > (2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

---

[4] Though not dispositive here, the Parties both cite to and dispute the applicability of the Policy's Earth Movement exclusion, which bars coverage for losses caused by, among other things, "earth sinking, rising or shifting." (Def.'s SOMF, ECF No. 90-1 at ¶ 3; *see also* Def.'s Mot., ECF No. 85-2 at 41–45). Because the Court resolves the Motion on the basis of the Loss Settlement provision, it need not address the Parties' arguments related to this exclusion.

      (a) The actual cash value of that part of the building damaged; or
      (b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.
  (3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:
      (a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;
      (b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and
      (c) Underground flues, pipes, wiring and drains.
  (4) **We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.** However, if the cost to repair or replace the damage is both:
      (a) Less than 5% of the amount of insurance in this policy on the building; and
      (b) Less than $2500;
  we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.
  (5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

(Policy, ECF No. 85-11 at 19–20 (emphasis added)). It is undisputed that Plaintiff has not repaired or replaced the allegedly damaged property. (Def.'s SOMF, ECF No. 90-1 at ¶ 16). Accordingly, Defendant contends that, under the Loss Settlement provision, Plaintiff is limited to recovering the actual cash value ("ACV") of the damage, and that Plaintiff has failed to provide competent evidence of ACV to support his claim. (Def.'s Mot., ECF No. 85-2 at 24–31). Plaintiff disagrees, arguing that his submission of replacement cost estimates is sufficient and permits a jury to determine ACV under the broad evidence rule. (Pl.'s Opp., ECF No. 90 at 13–17). Specifically, Plaintiff relies upon a proposal from a contractor, Premier Builders, (the "Proposal") estimating a

total repair cost of $361,015.00. (Pl.'s SOMF, ECF No. 93 at ¶ 9(d)). However, the Proposal reflects only replacement cost and does not provide an ACV calculation or account for depreciation.[5] (Def.'s SOMF, ECF No. 90-1 at ¶¶ 13–14).

## II.   PROCEDURAL HISTORY

Plaintiff initiated this action in the Superior Court of New Jersey, Camden County on May 18, 2021, alleging claims of breach of contract and bad faith and seeking benefits under the Policy. Defendant removed the case to this Court on June 18, 2021 pursuant to 28 U.S.C. § 1441, invoking diversity jurisdiction. (ECF No. 1). Following extensive discovery and several amendments to the scheduling order, Defendant moved for summary judgment on November 8, 2024. (ECF No. 85). Plaintiff filed opposition on December 3, 2024, (ECF No. 90), and Defendant replied on December 9, 2024. (ECF No. 91).

After reviewing the summary judgment record, the Court issued an Order on May 9, 2025, directing the parties to file supplemental briefing addressing certain issues. (ECF No. 95). The Parties timely submitted supplemental memoranda in accordance with the Court's Order. (ECF Nos. 96–99).

## III.   LEGAL STANDARD

Courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015)

---

[5] Defendant also argues that, even if Plaintiff is entitled to replacement cost value, his expert report on damages is inadmissible. (Def.'s Mot., ECF No. 85-2 at 31–34). Because the Court finds that Plaintiff has not provided competent evidence of ACV, it does not reach Defendant's argument regarding the admissibility of the Proposal.

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346 (quoting *Anderson*, 477 U.S. at 255).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 252). The non-moving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

## IV. DISCUSSION

### A. General Principles of Insurance Coverage under New Jersey Law

Under New Jersey law, the interpretation of an insurance policy is a question of law for the court. Insurance policies are construed in accordance with contract principles, and courts aim to give effect to the intent of the parties as expressed by the language of the policy. *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001) ("[T]he words of an insurance policy are to be given their plain, ordinary meaning."). Where the policy terms are clear and unambiguous, the court is bound to enforce the policy as written and should not "write for the insured a better policy of insurance than the one purchased." *Flomerfelt v. Cardiello,* 997 A.2d 991, 996 (N.J. 2010) (citation omitted).

However, because insurance policies are contracts of adhesion, they are subject to special rules of interpretation. *See Longobardi v. Chubb Ins. Co. of New Jersey*, 582 A.2d 1257, 1260 (N.J. 1990) (citation omitted). Courts must assume a "particularly vigilant role" in ensuring that

6

such policies conform to public policy and principles of fairness. *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992) (citation omitted). This approach reflects the "stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies." *Zacarias*, 775 A.2d at 1264.

When the language of a policy is ambiguous—that is, when it is susceptible to more than one reasonable interpretation—courts resolve the ambiguity in favor of the insured and against the insurer. *Voorhees*, 607 A.2d at 1260 (citation omitted); *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004) (citations omitted). However, courts should avoid manufacturing ambiguities and must be careful not to disregard the "clear import and intent" of the policy's language. *Flomerfelt*, 997 A.2d at 997 (citation omitted).

### B. Plaintiff's Breach of Contract Claim Fails Because of His Failure to Establish Actual Cash Value

In New Jersey, the elements necessary to prove a breach of an insurance contract are the same elements necessary to prove a breach of contract. Specifically, a plaintiff must show that there is: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Here, Defendant asserts that Plaintiff cannot establish damages because the Policy limits his recovery to ACV unless and until the repairs or replacement of the damaged property is complete. Defendant argues that because Plaintiff's evidence is limited to the replacement cost and does not establish ACV as required under the Policy, he cannot meet his burden to establish damages. (Def.'s Mot., ECF No. 85-2 at 23–31). In support of its argument, Defendant cites to a plethora of cases, including two that are directly on

7

point,[6] *Giacobbe v. QBE Specialty Ins. Co.*, No. 16-7928, 2018 WL 2113266 (D.N.J. May 8, 2018) and *Johnson v. Hanover Ins. Group*, No. 23-1294, 2025 WL 1527444 (D.N.J. May 29, 2025).[7]

In *Giacobbe*, the district court granted summary judgment in favor of the insurer on a breach of contract claim arising from wind damage to the plaintiffs' home during Superstorm Sandy, finding that a virtually identical loss settlement provision unambiguously limited recovery to ACV until repairs were complete. 2018 WL 2113266, at *1–4. Because the plaintiffs had not completed repairs, they were not entitled to replacement cost value and could only recover ACV if properly established. *Id.* at *4. The court further held that the plaintiffs failed to offer any competent evidence of ACV damages. *Id.* at *5. Although their expert opined on replacement costs, *see Giacobbe*, ECF No. 78-4 at ¶ 13 (D.N.J. filed Dec. 4, 2017), there was no evidence of ACV in the record. *Giacobbe*, 2018 WL 2113266, at *5. Accordingly, the Court found summary judgment was appropriate, emphasizing that, regardless of policy language governing claims procedures, plaintiffs bore the burden of proving damages as an element of their breach of contract claim under New Jersey law. *Id.* at *4–5.

Similarly, in *Johnson,* the court granted summary judgment to the insurer on a breach of contract claim related to hail damage to an insured's roof. 2025 WL 1527444 at *1. As in *Giacobbe*, the dispositive issue was the plaintiffs' failure to establish the ACV of their claimed

---

[6] Defendant also relies heavily on *Uddoh v. Selective Ins. Co. of Am.*, No. 13–2719, 2018 WL 2127733 (D.N.J. May 8, 2018), *aff'd*, 772 F. App'x 29 (3d Cir. 2019). While *Uddoh* is similar and its reasoning somewhat persuasive, it is nevertheless distinguishable: in *Uddoh*, the policyholder was required to submit an ACV estimate as part of the proof of loss, and instead submitted a proof of loss that was "incomprehensible." Here, by contrast, the Policy does not expressly require the insured to provide an ACV calculation. Accordingly, the Court bases its decision on *Giacobbe* and *Johnson*, which are more factually on point.

[7] *Johnson* was recently decided on May 29, 2025 and cited by Defendant as part of its supplemental briefing. (ECF No. 99).

loss. *Id.* at *3. Ultimately, the court determined that the loss settlement provision, which is virtually identical to the one at issue here, was clear and enforceable under New Jersey law, and that without any evidence of ACV, plaintiffs had not met their burden to establish damages. *Id.* at 3–6. Although the plaintiffs submitted an estimate of replacement cost, the court concluded that evidence of replacement cost was insufficient to support a claim for damages under a policy limiting recovery to ACV absent completed repairs. *Id.* at *6.

Here, the Court similarly concludes that summary judgment is warranted on Plaintiff's breach of contract claim because the Policy unambiguously limits recovery to ACV unless and until repairs are completed, *see, e.g., Giacobbe*, 2018 WL 2113266 at *3–4; *Johnson*, 2025 WL 1527444 at *3–5, and Plaintiff has failed to offer any competent evidence of ACV. Indeed, Plaintiff does not dispute that repairs have not been completed, nor does he argue that he qualifies for an exception to the ACV limitation, such as the *de minimis* repairs provision. Accordingly, his recovery is undisputedly limited to ACV, and he bears the burden of submitting evidence to establish that amount.[8]

Plaintiff attempts to meet his burden by invoking the "broad evidence rule" and relying on the Proposal's replacement cost estimate. This is insufficient. As determined in *Giacobbe* and *Johnson*, a plaintiff cannot simply present a replacement cost figure and expect a factfinder to somehow extrapolate ACV without more. Rather, he must provide a developed evidentiary foundation—such as depreciation calculations, market value comparisons, or other reliable

---

[8] While Plaintiff argues that the Policy does not preclude coverage for replacement cost damages, (Pl.'s Opp., ECF No. 90 at 6–13), this conflates the standards applicable during the claim adjustment process with those that govern a *prima facie* case of breach of contract in a litigation claim. At this stage, the question is not whether Defendant should have calculated and paid ACV benefits during the adjustment stage, but whether Plaintiff can carry his burden of proof on each element of his breach of contract claim—including damages. *See Giacobbe*, 2018 WL 2113266, at *4 (collecting cases).

9

valuation metrics—from which ACV may reasonably be determined under the broad evidence rule. *See Elberon Bathing Co. v. Ambassador Ins. Co.*, 389 A.2d 439, 443–445 (N.J. 1978) (explaining that in determining ACV under the broad evidence rule, a factfinder may consider "every fact and circumstance" logically tending to establish the loss, including original cost, cost of reproduction, market value, replacement cost less depreciation, income-producing potential, expert opinions, and other relevant evidence, to ensure indemnity consistent with the insured's actual pecuniary loss). Because Plaintiff has provided no such expert testimony here and damages of this sort are complex and thus outside the knowledge of the average juror, *see Est. of Knoster v. Ford Motor Co.*, No. 01-3168, 2008 WL 5416399, at *5 (D.N.J. Dec. 22, 2008) ("Expert testimony is required where the subject matter is outside the common knowledge and experience of an average juror.") (citations omitted); *Razaghi v. Razaghi*, No. 18-01622, 2024 WL 4539244, at *2 (D. Nev. Oct. 21, 2024) ("[W]hen a measure of damages involves complex calculations requiring specialized knowledge of relevant factors and industry standards—things outside the knowledge of the average juror—testimony by an expert witness may be necessary.") (citing *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F.Supp.3d 932, 947 (C.D. Cal. 2014)), Defendant's Motion for Summary Judgment must be granted.

Having concluded that Defendant is entitled to summary judgment on Plaintiff's breach of contract claim, Plaintiff's bad faith claim must be similarly dismissed. *See Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504, 515 (D.N.J. 2008), *aff'd*, 352 F. App'x 642 (3d Cir. 2009) (concluding that plaintiff's bad faith claim necessarily failed because plaintiff could not prevail on underlying breach of contract claim).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment, (ECF No. 85), is **GRANTED**. An appropriate Order accompanies this Opinion.

*/s/ Christine P. O'Hearn*
_____
**CHRISTINE P. O'HEARN**
**United States District Judge**